IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Deborah J. Stahl,                                    Case No. 3:06 CV 2024

                        Plaintiff,          MEMORANDUM OPINION
                                            AND ORDER

        -vs-

                                            JUDGE JACK ZOUHARY
Commissioner of Social Security,

                        Defendant.


        Plaintiff Deborah Stahl filed a Complaint (Doc. No. 1) against the Commissioner of Social

Security (Commissioner) seeking reversal of the Commissioner's decision to deny disability insurance

benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § § 416 (I) and 423.   Plaintiff

requested judicial review pursuant to 42 U.S.C. § 405(g) which states:

        Any individual, after any final decision of the Commissioner of Social Security made
        after a hearing to which he was a party, irrespective of the amount in controversy, may
        obtain a review of such decision by a civil action commenced within sixty days after
        the mailing to him of notice of such decision or within such further time as the
        Commissioner of Social Security may allow. Such action shall be brought in the
        district court of the United States for the judicial district in which the plaintiff resides
        . . . .

Plaintiff, who resides in this District, timely filed the Complaint on August 23, 2006.

        The case was referred to United States Magistrate Judge Vernelis Armstrong pursuant to Local

Rule 72.2(b)(2).  Following briefs on the merits from both parties, the Magistrate filed a Report and

Recommendation (Doc. No. 15) recommending that the Court affirm the Commissioner's decision to deny Plaintiff's claim.

This matter is before the Court on Plaintiff's Objection (Doc. No. 21), to which Defendant has responded (Doc. No. 24) and Plaintiff has replied (Doc. No. 25).  In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings to which Plaintiff objects.

### PROCEDURAL BACKGROUND

Plaintiff filed an application for Social Security DIB on July 22, 2003.  Plaintiff alleged disability since July 1, 2001 (Tr. 185-187). Plaintiff's application was initially denied. Upon reconsideration, she requested a hearing before an administrative law judge (ALJ) (Tr. 145-147, 149-152).  The ALJ denied Plaintiff's claim on April 12, 2006 (Tr. 16-24). The ALJ's decision became final when the Appeals Council denied review (Tr. 7-9).

### FACTUAL BACKGROUND

This Court adopts the factual background and record of medical evidence as stated in the Report and Recommendation (pp. 2-7).

### STANDARD FOR DISABILITY

"Under the Social Security Act, 42 U.S.C. § 423(a), an individual is entitled to disability insurance benefit payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability." *Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *citing* 42 U.S.C. § 423(d)(1)(A).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

2

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. at 529.  In addition, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* (*citing* 42 U.S.C. § 423(d)(2)).

A five-step sequential analysis determines whether a person is disabled. *Id*.; 20 C.F.R. § 404.1520.  This analysis may be summarized as follows:

1.    Was claimant engaged in a substantial gainful activity (SGA);

2.    Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities;

3.    Does the severe impairment meet one of the Listed impairments;

4.    Determine claimant's residual functional capacity and whether claimant can perform past relevant work;

5.    Can claimant do any other work considering his residual functional capacity, age, education, and work experience.

Only if a claimant satisfies each element of the analysis, including the inability to do other work, and meets the duration requirement, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

Under the five-step sequential evaluation analysis, the claimant has the burden of proof in Steps One through Four.  *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to show whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*; *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) ("[T]he Secretary

3

bears the burden of proof at Step Five, which determines whether the claimant is able to perform work available in the national economy. But the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.")  The Court considers the claimant's residual functional capacity, age, education, and past work experience, to determine if claimant could perform other work. *Walters*, 127 F.3d at 529.  The residual functional capacity is used in Step Four to assess if the claimant can perform past relevant work, and at Step Five to determine whether the claimant can adjust to other work.  20 C.F.R. § 404.1520(e); *see also Bowen*, 482 U.S. at 146 n. 5 (1987).  The burden at Step Five may be met with testimony of a vocational expert that supports the ALJ's findings.  *Varley v. Sec'y of Health & Human Svcs.*, 820 F.2d 777, 779 (6th Cir. 1987).

## THE ALJ'S DETERMINATIONS

1.    Plaintiff met the non-disability requirements for a period of disability and DIB set forth in Section 216(I) of the Social Security Act. She was insured for benefits through the date of the decision.

2.    Plaintiff was not engaged in substantial gainful activity since her alleged onset date - July 1, 2001.

3.    Plaintiff has a severe impairment, "recurrent major depressive disorder," a medically determinable impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520.

4.    Plaintiff's recurrent major depression was severe, but this medically determinable impairment did not meet or medically equal one of the Listings.

5.    Plaintiff's testimony regarding her limitations was "not totally credible."

6.    Plaintiff could not perform past relevant work.

7.    At onset date of claimed disability, Plaintiff was a "younger individual between ages of 45 and 49." At the  time of hearing she was 53 years old which is defined as "closely approaching advanced age."

8.     Plaintiff has the residual functional capacity to make a vocational adjustment to work that exists in significant numbers in the national economy based on age, educational background, work experience. These jobs include: janitor (1,500 jobs in the region), folder (1,000 jobs in the region), and food preparer (2,500 jobs in the region).

9.     Plaintiff was not under a disability as defined by the Act at any time through the date of this decision. 20 C.F.R. § 404.1520(a)(4)(v)(g).

(Tr. 23).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528.  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Comm'r. of Soc. Sec.*, 966 F.2d 1028, 1030 (6th Cir. 1992).  The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r. of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn the decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  The Court does not review the evidence *de novo*, nor make credibility determinations, nor weigh the evidence. The Court examines the record only.  *Besaw*, 966 F.2d at 1030.

5

### DISCUSSION

Plaintiff objects to the Magistrate's recommendation to affirm the ALJ's decision on two grounds. First, Plaintiff claims the ALJ committed legal error by failing to give deference to treating psychiatrist Dr. Ibrahim's opinion. Plaintiff claims the ALJ's reasons for discounting Dr. Ibrahim's opinion did not amount to "good reasons" as required by 20 C.F.R. § 404.1527(d)(2) because the ALJ did not comport with all of the steps required by the relevant regulations. Second, Plaintiff claims the ALJ improperly evaluated whether Plaintiff's impairment met or medically equaled a Listing. Plaintiff alleges that part of this improper evaluation included the failure to call a medical expert at the hearing.

### 1.      Good Reasons to Give Less Weight to Dr. Ibrahim's Opinion

Plaintiff asserts the ALJ discredited treating psychiatrist Dr. Ibrahim's opinion without good reason.  The Magistrate concluded the ALJ properly rejected the opinion.

A "treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. § 404.1502.  Neither party disputes that Dr. Ibrahim is a "treating source."

As the Report and Recommendation stated, the ALJ must give the opinion of a treating source controlling weight if he or she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If the opinion of a treating source is not accorded controlling weight, the ALJ must apply certain factors: "namely, the length of the treatment relationship and the frequency of examination,

the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source in determining what weight to give the opinion." *Id.*; 20 C.F.R. § 404.1527(d)(2). The regulation requires that the ALJ give "good reasons" for not giving weight to a treating physician's opinion. *Wilson*, 378 F.3d at 544.

Plaintiff objects because she claims the ALJ did not address most or all of the factors in § 404.1527(d)(2) in evaluating Dr. Ibrahim's opinion (Doc. No. 25 at pp. 3-4). The factors are "mandatory procedural protection" designed to "let claimants understand the disposition of their cases [and to ensure] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Even if substantial evidence supports the ALJ's conclusion, "reversal is required" when the agency fails to follow its own procedural regulations. *Id.* at 545. However, there is no requirement that the ALJ address all or most of those factors. A relevant Social Security Ruling states that "[n]ot every factor for weighing opinion evidence will apply in every case." Soc. Sec. Rul. 06-03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *5 (Aug. 9, 2006); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (ALJ need not expressly apply all listed factors in evaluating the treating source's opinion).

The case Plaintiff cites for the proposition that each factor must be analyzed does not require a rigid approach, but instead requires "sufficiently specific" explanations to justify giving less weight to the opinion. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). The ALJ must "identify[] the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence." *Id.* at 243 The

Sixth Circuit recently explained that *Rogers* does not require recitation of all the listed factors. *Infantado v. Astrue*, No. 07-1656, 2008 WL 345344, at *4 (6th Cir. Feb. 27, 2008).  Rather, the law requires that the ALJ's decision denying disability benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at * 5 (1996)).  Unlike in *Rogers*, the ALJ's explanation here met this test.

The medical opinion at issue is a July 2005 Assessment of Ability to Do Work Related Activities (Mental) form.  In filling out this form, Dr. Ibrahim indicated Plaintiff was moderately limited in her capacities to: maintain attention and concentration for extended periods; sustain a routine without special supervision; understand/carry out/remember instructions; perform complex, repetitive, or varied tasks; behave in an emotionally stable manner; and respond appropriately to supervisors, co-workers, work pressures and changes in the work setting.  Dr. Ibrahim diagnosed Plaintiff with Major Depression, and indicated that the duration of the above limitations lasted or can be expected to last for 12 months or longer.  This form defined "moderate" as an impairment that affects ability to function at 17% - 32% in an eight hour day (Tr. 548-549).  The ALJ acknowledged that an individual with moderate limitations as defined by the form would be precluded from employment (Tr. 21).

However, the ALJ found this opinion "inconsistent with [Plaintiff's] treatment records reflecting significant improvement to the point that she is now able to attend college" and with "no supportive findings for its' [sic] conclusions" (Tr. 21).  Indeed, the ALJ cited a February 28, 2005

letter written by Dr. Ibrahim stating that Plaintiff "was doing well on her medications, had no side effects, and had achieved optimal improvement in her treatment" (Tr. 22). Therefore, the ALJ discounted treating psychiatrist Dr. Ibrahim's opinion. The Court finds the ALJ stated good reasons for giving treating psychiatrist Dr. Ibrahim's opinion less weight, and considered the factors of supportability and consistency of the opinion with the record as a whole. *See Wilson*, 378 F.3d at 544.

The form stated that "[y]our answer should generally be consistent with your records (or narrative report), and any discrepancies should be explained" (Tr. 548). Plaintiff argues "[i]t is fair to assume that Dr. Ibrahim did not include findings supportive of his opinion on the form he completed because, as far as he was concerned, his opinion *was consistent* with his records of treatment." (Doc. No. 25 at p.2). However, it was reasonable for the ALJ to discount an opinion devoid of detailed findings. 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Here, Dr. Ibrahim offered no records or explanations for his conclusion.

Moreover, Dr. Ibrahim's opinion was inconsistent with some of his own statements and the record as a whole. He noted that Plaintiff had shown "dramatic improvement" from April 2003 to March 2004, and by February 2005 she was able to start college (Tr. 21). The record supports this conclusion. State agency psychologist Dr. Stratton examined Plaintiff in April 2003 and found that despite her moderate limitations she "ha[d] the capacity to perform simple and routine tasks and should work in [a] non-public environment" (Tr. 387). In July 2003, state agency psychologist, Dr. Williams, a non-examining psychologist, found that Plaintiff "has the capacity to perform simple and routine tasks and should work in a non-public environment" (Tr. 373-387). The ALJ found Dr.

9

Stratton's and Dr. Williams' opinions more credible than Dr. Ibrahim's opinion (Tr. 21).  *See* Soc. Sec. Rul. 96-2p ("[O]pinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances.")  Dr. Stratton examined Plaintiff, which distinguishes this case from *Rogers*.  *See Rogers,* 486 F.3d at 245-246 (ALJ failed to provide sufficient justification in giving greater weight to opinions of two non-examining physicians over treating physicians).

The ALJ further noted that "except for a few occasions when her situational factors understandably resulted in an increase of depression, [Plaintiff's] treatment records reflect continued and sustained improvement" (Tr. 21).  Dr. Ibrahim noted that Plaintiff's GAF scores[1] in December 2003-July 2004 ranged from 60-70.  Further, Plaintiff's improvement throughout 2004 was reflected in records of Plaintiff's counseling visits to the Giving Tree (Tr. 536-540, 542).  On February 2005, Dr. Ibrahim wrote Owens Community College noting that Plaintiff was "doing well on her medication. She is not experiencing any side effects. She had achieved optimal improvement in her treatment and is eager to accomplish her educational goals."  Dr. Ibrahim requested that the college accommodate Plaintiff (Tr. 487). The ALJ found this letter was evidence of dramatic improvement (Tr. 21).

In sum, Dr. Ibrahim's July 2005 opinion indicating that Plaintiff was disabled was not consistent with the evidence.  The evidence shows that in April 2003, Plaintiff had the ability to do

---

[1]

GAF measures social, occupational, and psychological functioning.  A score of 51-60 suggests that a plaintiff has moderate symptoms (for example: flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (for example: few friends, conflicts with peers/co-workers). AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, GLOBAL ASSESSMENT OF FUNCTIONING SCALE, 4TH ed., *Text Revision* (2000). A score in the 61-70 range, like Plaintiff's, indicates milder symptoms.

10

simple and routine tasks in a non-public environment; in 2004 she continually improved with medication; and in February 2005, she attended college. Substantial evidence supports the ALJ's decision to discount Dr. Ibrahim's opinion based on inconsistency with the entire record.

**2**.  **The ALJ Properly Evaluated Whether Plaintiff's Impairment Met or Medically Equaled a Listing**

Next, Plaintiff contends the ALJ erred in not finding Plaintiff met Listing 12.04 under Depressive Disorders.  20 C.F.R. pt. 404, subpt. P, app. 1, R. 12.04.  "To meet a listed impairment, the claimant must show that his impairment meets all of the requirements for a listed impairment.  An impairment that meets only some of the medical criteria and not all does not qualify, despite its severity."  *Ridge v. Barnhart*, 232 F. Supp. 2d 775, 788 (N.D. Ohio 2002) (citations omitted).  A claimant may also meet the burden by showing the impairment is medically equivalent to a Listing.  To do so, he or she must "present medical findings equal in severity to all the criteria for the one most similar listed impairment."  *Id.* (citation omitted).  The Magistrate concluded the ALJ's determination that Plaintiff neither met nor medically equaled the Listing was appropriate in light of Plaintiff's medical evidence and the governing standard (pp. 14-17).  According to Plaintiff, the ALJ's determination "consisted of *one sentence*":

> Although the claimant suffers from an impairment, or recurrent major depressive disorder, that is "severe" within the meaning of the Regulations it is not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations no. 4 (Tr. 18).

The "one sentence" allegation is unfounded as evidenced by the ALJ's statements regarding Plaintiff's ability to do work on a sustained and regular basis.  *See Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments. This determination is

11

usually made at stages one through four, when the claimant is proving the extent of his impairments."). The ALJ's finding that Plaintiff did not meet the Listing implicitly relied on an analysis of the medical evidence regarding the severity of Plaintiff's impairment.

First, the ALJ found that there was no further evidence of treatment for emotional problems from Plaintiff's alleged onset of disability, July 1, 2001, until February 2002. The record supports this finding. Second, the ALJ found a "general absence of further complaints related to depression," from July 2002 until January 2003 (Tr. 19). Again, the record supports this finding. Third, the ALJ detailed that despite Plaintiff's diagnosis of recurrent major depression and continuing problems with depression, poor sleep, and motivation, Plaintiff's GAF scores hovered around 60-70 in 2003, which signals mild to moderate symptoms and supports the determination that Plaintiff failed to meet the Listing.

Although Plaintiff's GAF score dropped in October of that year, at that time, Plaintiff complained that a friend had died. This evidence is supportive of the ALJ finding that "situational factors" resulted in increased depression, but overall Plaintiff had "continued and sustained improvement" (Tr. 19, 21). The ALJ also considered Plaintiff's improvement with medication. Throughout 2004, Plaintiff's GAF scores were solid despite Plaintiff's stress of caring for her parents. When Plaintiff's father died, her depression increased. Nonetheless, prescribed mediation helped her cope and improved her sleep. Plaintiff's good progress at her individual counseling sessions were noted throughout 2004. For example, in March, medication "helped dramatically with attitude," and in October she was making "good progress toward goals" (Tr. 539, 542). Finally, the ALJ noted Dr. Ibrahim's statements that Plaintiff was doing well on her medications and had achieved optimal improvement in her treatment. These statements are inconsistent with an individual whose mental

state is so severe as to preclude work activity.  Moreover, even with special accommodations, Plaintiff's attendance at college is some evidence that Plaintiff's mental impairments were not so severe as to preclude all work activity.

The ALJ's determination of the severity of Plaintiff's impairment was not perfunctory and extended beyond his one-sentence conclusion.  In examining Plaintiff's residual functional capacity, the ALJ was supported by substantial evidence in concluding that Plaintiff's impairment was not "severe" enough to meet or medically equal a Listing (Tr. 18).

Plaintiff also contends that her symptoms mandated a finding of medical equivalence.  Plaintiff states that despite her reporting certain symptoms, state agency psychologist Dr. Williams incorrectly failed to indicate these symptoms in completing the Psychiatric Review Technique form (Tr. 373-84). Plaintiff claims the listed symptoms of decreased energy, difficulty concentrating, and thoughts of suicide, were erroneously left unmarked. Plaintiff argues that if just one of those symptoms were properly indicated on the form, Plaintiff would have met the severity required for Part A of the Medical Listing 12.04, Affective Disorder.

To meet the level of severity required in Listing 12.04, Plaintiff must meet both Part A and Part B.  Part A is met by demonstrating an Affective Disorder characterized by four out of nine possible symptoms.  Part B is met by demonstrating at least two of four possible symptoms affecting the ability to: (1) perform activities of daily living; (2) maintain social function; (3) concentrate and maintain a persistent pace in performing tasks; and (4) repeated episodes of deterioration.  Dr. Williams concluded Plaintiff had an Affective Disorder under 12.04A characterized by three symptoms: anhedonia, sleep disturbance, and feelings of worthlessness.  However, the severity

13

required under 12.04A was **not** met.  The Listing requires a finding that four of the enumerated symptoms exist with the required continuousness, but Dr. Williams indicated only three (Tr. 376).

Furthermore, upon examination, Dr. Stratton did not conclude that Plaintiff had decreased energy.  Because Dr. Stratton did not find Plaintiff had decreased energy, Dr. Williams was not required to check that box on the assessment form. Next, Dr. Stratton did report that Plaintiff was moderately impaired in her ability to concentrate but Dr. Williams did not check off the "difficulty concentrating" box.  An examination of the form shows that a symptom box must only be checked when the symptom has "medically documented persistence, either continuous or intermittent" (Tr. 496).  Dr. Stratton found that despite Plaintiff's symptoms, she could "perform at least simple repetitive tasks" (Tr. 372).  Therefore, Dr. Williams was supported in not checking off the "Difficulty concentrating or thinking" box.  The Court notes that state agency physicians such as Dr. Williams are highly qualified physicians who are experts in the evaluation of medical issues in disability claims under the Act.  *See* 20 § C.F.R. 404.1527(f)(2)(I); Soc. Sec. Rul. 96-6p, Titles II & XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review: Medical Equivalence, 1996 WL 374180, at * 4 (July 2, 1996).

Finally, the "thoughts of suicide" box was not checked under Affective Disorders.  Dr. Stratton did note that Plaintiff had "suicidal ideation and behavior once when she took seven Paxil pills" (Tr. 371), but a one-time event of suicidal thoughts does not meet the definition of "continuous or intermittent."  No other medical documentation indicates that Plaintiff met the required level of severity for Part A.  Plaintiff failed to meet her burden of establishing that her sole impairment meets

14

or equals all the criteria for the most similar listed impairment.  The ALJ's findings were supported by substantial evidence.

Finally, Plaintiff claims that based on the facts of her case, the ALJ was required to call a medical expert to testify at the hearing on the issue of medical equivalence.  The ALJ has discretion in deciding whether to call a medical expert.  20 C.F.R. § 404.1527(f)(2); *Reynolds v. Sec'y of Health & Human Svcs.*, 707 F.2d 927, 930 (6th Cir. 1983).  While calling upon an expert at the hearing is discretionary, the ALJ must at least **consider** the opinion of a state agency physician or psychologist when determining the issue of medical equivalence.  20 C.F.R. § 404.1526(c); Soc. Sec. Rul. 96-6p.  The ALJ satisfies this requirement with the signature of a state agency medical or psychological consultant on a Disability Determination and Transmittal form.  Soc. Sec. Rul. 96-6p, at *3; *see also Hicks v. Comm'r. of Soc. Sec.*, 105 F. App'x 757, 762 (6th Cir. 2004).

Here, Dr. Williams signed a Disability Determination and Transmittal Form at the reconsideration level, thus satisfying the ALJ's obligation to consider a state agency opinion on medical equivalence (Tr. 52).  The question, then, is whether the ALJ was required to go further and call upon a medical expert to testify at the hearing.  The ALJ must obtain an updated medical opinion from a medical expert when:

> no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or [w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Soc. Sec. Rul. 96-6p, at *4.  If either of the two circumstances above are met, the ALJ must call upon a medical expert to testify at the hearing.  *Id*. As explained above, Plaintiff did not meet the necessary

15

symptoms to satisfy Listing 12.04 Part A.  Therefore, the case record did not require the ALJ to hear expert testimony. Further, additional medical evidence received after Dr. Williams' finding of no medical equivalence in July 2003 tended to show an improvement in Plaintiff's condition. Plaintiff's condition became, if anything, less severe, which would tend to prevent a change in the consultant's finding that Plaintiff did not meet or equal the severity of the Listing. The ALJ's decision not to call upon a medical expert was supported by substantial evidence.

### CONCLUSION

For the foregoing reasons, the ALJ's conclusion denying disability benefits applied proper legal standards and was supported by substantial evidence.  This Court adopts the Report and Recommendation affirming the Commissioner's denial of Plaintiff's claim and dismisses the case. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

                         *s/ Jack Zouhary*
                         JACK ZOUHARY
                         U. S. DISTRICT JUDGE

                         March 31, 2008

---

[2]"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  28 U.S.C. § 1915(a)(3).